UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| DANNY N., | ) | Case No. CV 16-6715-SP |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | MEMORANDUM OPINION AND ORDER |
| | ) | |
| NANCY BERRYHILL, Deputy Commissioner for Operations of Social Security Administration, | ) ) ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

## I.

## **INTRODUCTION**

On September 7, 2016, plaintiff Danny N. filed a complaint against defendant, the Commissioner of the Social Security Administration ("Commissioner"), seeking a review of a denial of supplemental security income ("SSI"). The parties have fully briefed the matters in dispute, and the court deems the matter suitable for adjudication without oral argument.

Plaintiff presents one disputed issue for decision: whether the Administrative Law Judge ("ALJ") properly considered the opinion of an

examining physician. Plaintiff's Memorandum in Support of Plaintiff's Complaint ("P. Mem.") at 4-8; *see* Defendant's Memorandum in Support of Answer ("D. Mem.") at 3-8.

Having carefully studied the parties' memoranda on the issue in dispute, the Administrative Record ("AR"), and the decision of the ALJ, the court concludes that, as detailed herein, the ALJ properly considered the examining physician's opinion. Consequently, the court affirms the decision of the Commissioner denying benefits.

## II.

## FACTUAL AND PROCEDURAL BACKGROUND

Plaintiff, who was forty-eight years old on the alleged disability onset date, completed high school but may or may not have received a diploma. AR at 55, 90, 180, 281. Plaintiff has past relevant work as cabinetmaker, tow truck driver, and labeler. *Id.* at 77-78, 81.

Plaintiff filed two prior applications for SSI on December 31, 2010 and November 30, 2011, both of which were denied at the initial level. *Id*. at 91.

On May 1, 2013, plaintiff filed a third application for SSI, alleging an onset date of December 1, 2009 due to osteoarthritis, hyperlipidemia, diabetes, neuropathy, insomnia, high blood pressure, depression, obesity, gout, and fatty liver. *Id*. at 90. The Commissioner denied plaintiff's application initially, after which he filed a request for a hearing. *Id*. at 108-13.

On October 17, 2014, plaintiff, represented by counsel, appeared and testified at a hearing before the ALJ. *Id*. at 51-89. The ALJ also heard testimony from Jane Haile, a vocational expert. *Id*. at 77-87. On January 30, 2015, the ALJ denied plaintiff's claim for benefits. *Id*. at 34-46.

Applying the well-known five-step sequential evaluation process, the ALJ found, at step one, that plaintiff had not engaged in substantial gainful activity

2

since May 1, 2013, the application date. *Id*. at 36.

At step two, the ALJ found plaintiff suffered from the following impairments: diabetes; degenerative joint disease of the lumbar spine; degenerative changes of the knees; hearing loss; obesity; post-traumatic stress disorder ("PTSD"); depressive disorder, not otherwise specified ("NOS"); and a history of polysubstance abuse. *Id*.

At step three, the ALJ found plaintiff's impairments, whether individually or in combination, did not meet or medically equal one of the listed impairments set forth in 20 C.F.R. part 404, Subpart P, Appendix 1 (the "Listings"). *Id*. at 37.

The ALJ then assessed plaintiff's residual functional capacity ("RFC"),[1] and determined he had the RFC to: lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk for six hours in an eight-hour workday; and sit for six hours per workday. *Id*. The ALJ precluded plaintiff from climbing ropes, ladders, and scaffolds, but found that he could occasionally engage in other postural activities and use foot controls. *Id*. The ALJ also found plaintiff had to avoid workplace hazards such as dangerous machinery and unprotected heights. *Id*. From a mental perspective, the ALJ limited plaintiff to simple instructions with only occasional public contact. *Id*.

The ALJ found, at step four, that plaintiff could not perform his past relevant work. *Id*. at 44.

At step five, considering plaintiff's age, education, work experience, and RFC, the ALJ found there were jobs that existed in significant numbers in the

---

[1]    Residual functional capacity is what a claimant can do despite existing exertional and nonexertional limitations. *Cooper v. Sullivan*, 880 F.2d 1152, 1155-56 n.5-7 (9th Cir. 1989). "Between steps three and four of the five-step evaluation, the ALJ must proceed to an intermediate step in which the ALJ assesses the claimant's residual functional capacity." *Massachi v. Astrue*, 486 F.3d 1149, 1151 n.2 (9th Cir. 2007).

national economy that plaintiff could perform, including storage facility rental clerk, hospital food-service worker, and final assembler. *Id*. at 45. Consequently, the ALJ concluded plaintiff did not suffer from a disability as defined by the Social Security Act ("Act" or "SSA"). *Id.* at 46.

Plaintiff filed a timely request for review of the ALJ's decision, which was denied by the Appeals Council. *Id.* at 1-3. The ALJ's decision stands as the final decision of the Commissioner.

## III.

## STANDARD OF REVIEW

This court is empowered to review decisions by the Commissioner to deny benefits. 42 U.S.C. § 405(g). The findings and decision of the Social Security Administration must be upheld if they are free of legal error and supported by substantial evidence. *Mayes v. Massanari*, 276 F.3d 453, 458-59 (9th Cir. 2001) (as amended). But if the court determines that the ALJ's findings are based on legal error or are not supported by substantial evidence in the record, the court may reject the findings and set aside the decision to deny benefits. *Aukland v. Massanari*, 257 F.3d 1033, 1035 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1147 (9th Cir. 2001).

"Substantial evidence is more than a mere scintilla, but less than a preponderance." *Aukland*, 257 F.3d at 1035. Substantial evidence is such "relevant evidence which a reasonable person might accept as adequate to support a conclusion." *Reddick v. Chater*, 157 F.3d 715, 720 (9th Cir. 1998); *Mayes*, 276 F.3d at 459. To determine whether substantial evidence supports the ALJ's finding, the reviewing court must review the administrative record as a whole, "weighing both the evidence that supports and the evidence that detracts from the ALJ's conclusion." *Mayes*, 276 F.3d at 459. The ALJ's decision "'cannot be affirmed simply by isolating a specific quantum of supporting evidence.'"

*Aukland*, 257 F.3d at 1035 (quoting *Sousa v. Callahan*, 143 F.3d 1240, 1243 (9th Cir. 1998)).  If the evidence can reasonably support either affirming or reversing the ALJ's decision, the reviewing court "'may not substitute its judgment for that of the ALJ.'"  *Id.* (quoting *Matney v. Sullivan*, 981 F.2d 1016, 1018 (9th Cir. 1992)).

## IV.

## DISCUSSION

Plaintiff argues the ALJ failed to provide specific and legitimate reasons supported by substantial evidence for rejecting the opinion of Dr. Rama Nadella, an examining psychiatrist.  P. Mem. at 4-8.

In determining whether a claimant has a medically determinable impairment and his or her RFC, among the evidence the ALJ considers is medical evidence.  20 C.F.R. § 416.927(b).[2]  In evaluating medical opinions, the regulations distinguish among three types of physicians:  (1) treating physicians; (2) examining physicians; and (3) non-examining physicians.  20 C.F.R. § 416.927(c), (e); *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1996) (as amended).  "Generally, a treating physician's opinion carries more weight than an examining physician's, and an examining physician's opinion carries more weight than a reviewing physician's." *Holohan v. Massanari*, 246 F.3d 1195, 1202 (9th Cir. 2001); 20 C.F.R. § 416.927(c)(1)-(2).  The opinion of the treating physician is generally given the greatest weight because the treating physician is employed to cure and has a greater opportunity to understand and observe a claimant.  *Smolen v. Chater*, 80 F.3d 1273, 1285 (9th Cir. 1996); *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Nevertheless, the ALJ is not bound by the opinion of the treating physician.

---

[2]  For claims filed before March 27, 2017, the evidence is considered under 20 C.F.R. § 416.927.

*Smolen*, 80 F.3d at 1285. If a treating physician's opinion is uncontradicted, the ALJ must provide clear and convincing reasons for giving it less weight. *Lester*, 81 F.3d at 830. If the treating physician's opinion is contradicted by other opinions, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting it. *Id.* Likewise, the ALJ must provide specific and legitimate reasons supported by substantial evidence for rejecting the contradicted opinions of examining physicians. *Id.* at 830-31. The opinion of a non-examining physician, standing alone, cannot constitute substantial evidence. *Widmark v. Barnhart*, 454 F.3d 1063, 1066 n.2 (9th Cir. 2006); *Morgan v. Comm'r*, 169 F.3d 595, 602 (9th Cir. 1999); *see also Erickson v. Shalala*, 9 F.3d 813, 818 n.7 (9th Cir. 1993).

### 1.   <u>Medical History With Respect to Mental Impairments</u>

Dr. Reynoldo Abejuela, a consultative psychiatrist, examined plaintiff on July 22, 2011 in connection with his first application for SSI. AR at 279-86. Dr. Abejuela did not review any medical records. *See id*. at 280-81. Plaintiff complained that he was anxious and depressed, angered easily, and had troubles with concentration and memory. *See id*. at 280. Dr. Abejuela observed plaintiff, among other things, was initially uncooperative, had a mildly depressive tone, was logical and coherent, was mildly depressed and anxious, had mildly impaired short-term and long-term memory, was oriented, and had fair impulse control. *See id*. at 282-83. Based on the history and examination, Dr. Abejuela diagnosed plaintiff with depressive disorder NOS with mild anxiety. *Id*. at 283. Dr. Abejuela opined that plaintiff's psychiatric limitations ranged from none to mild, and that the symptoms were only temporary. *Id*. at 285.

Dr. Rama Nadella, a consultative psychiatrist, examined plaintiff on August 19, 2013 in connection with the third SSI application. *Id*. at 436-41. Dr. Nadella did not review any medical records. *See id*. at 436. Plaintiff reported to Dr.

6

Nadella that about twenty years prior, one of his brothers murdered four people in one day, including his wife and two aunts, and plaintiff saw all of the dead bodies. *See id*. at 437. Subsequent to the murders, plaintiff's wife divorced him out of fear that he would kill her. *See id*. Plaintiff claimed that since the murders, he had been unable to hold onto a steady job, angered easily, had periods of homelessness, got nightmares and flashbacks, and still felt guilt about not having helped his brother. *See id*. Dr. Nadella observed plaintiff: looked anxious, depressed, and tearful talking about his brother; had coherent, relevant, and non-delusional thoughts; had an anxious and depressed mood; was alert and oriented; and had intact insight and judgment. *See id*. at 438-39. Dr. Nadella diagnosed plaintiff with severe PTSD and depressive disorder NOS. *Id*. at 439. From a functional perspective, Dr. Nadella opined plaintiff was: able to perform simple and repetitive tasks but not detailed and complex tasks; not able to maintain regular attendance; markedly limited in performing work activities on a consistent basis, completing a normal workday without interruption, and in his ability to interact with the public, coworkers, and supervisors; and moderately limited in performing work activities without additional supervision, in accepting instructions, and in dealing with usual stressors. *Id*. at 440. Dr. Nadella opined that, even with active treatment, plaintiff's condition was not expected to improve in the next twelve months. *See id*.

Dr. Kim Morris, a State Agency physician, reviewed plaintiff's medical records and Dr. Nadella's opinion. *See id*. at 95. Dr. Morris noted that plaintiff complained of depression and had been treated with psychotropic drugs. *See id*. Dr. Morris further noted that plaintiff reported improvement while on the medication but he was not compliant with the treatment plan. *See id*. Dr. Morris opined plaintiff had moderate limitations in his ability to carry out detailed instructions, maintain attention and concentration for extended periods, complete a

normal work day and workweek without interruptions from psychologically based symptoms, perform at a consistent pace without an unreasonable number and length of rest periods, interact appropriately with the general public, maintain socially appropriate behavior, and respond appropriately. *Id*. at 99-100. Dr. Morris opined plaintiff was not significantly limited otherwise. *Id.*

## 2. **The ALJ's Findings**

Relying on the treatment records, medical opinions, and plaintiff's allegations, the ALJ determined that, from a mental perspective, plaintiff was limited to simple instructions with only occasional public contact. *Id*. at 37. In reaching his RFC determination, the ALJ discussed plaintiff's medical history, accepted the State Agency physician's opinion, and appeared to give no weight to Dr. Nadella's opinion. *See id*. at 38, 40-41. The ALJ discounted Dr. Nadella's opinion because: (1) he did not review any medical records; (2) plaintiff had not received specialized psychiatric treatment; (3) plaintiff's psychiatric symptoms were temporary and occurred when he ceased to comply with his prescribed medications; (4) plaintiff responded well to treatment; (5) the opinion was not supported by the objective medical evidence; and (6) his opinion was primarily based on plaintiff's self-reporting and plaintiff was not credible, particularly with respect to his claim about his brother's murders and their effect on him. *Id*. at 41. Some of the ALJ's reasons were specific and legitimate and supported by substantial evidence.

First, the ALJ gave Dr. Nadella's opinion no weight because he did not review any medical files. *Id*. The fact that an examining physician did not review a claimant's treating records may be a reason to give greater weight to the opinions of a treating physician or another examining physician who did review treatment records. *See Vargas v. Berryhill*, 2017 WL 968999, at *4 (C.D. Cal. Mar. 13, 2017); *Pyle v. Colvin*, 2014 WL 1029845, at *7 *(C.D. Cal. Mar. 14, 2014). But

the failure to review medical records is not a specific and legitimate reason to reject an examining physician's opinion because the opinion of an examining physician that is based on independent clinical findings may constitute substantial evidence. *Orn v. Astrue*, 495 F.3d 625, 632 (9th Cir. 2007). Here, Dr. Nadella performed a mental status examination and based his opinion, in part, on those findings.

The ALJ's second reason for discounting Dr. Nadella's opinion – plaintiff had not sought psychiatric treatment – was similarly not legitimate. AR at 41. Typically, the failure to seek treatment is a basis for discounting a plaintiff's credibility, not the physician's credibility, and even then it is questionable when it comes to mental health issues. *Tommasetti v. Astrue*, 533 F.3d 1035, 1039 (9th Cir. 2008); *see Nguyen v. Chater*, 100 F.3d 1462, 1465 (9th Cir. 1996) ("[I]t is a questionable practice to chastise one with a mental impairment for the exercise of poor judgment in seeking rehabilitation.") (internal quotation marks and citation omitted). Moreover, so long as Dr. Nadella's opinion was based on independent clinical findings, whether plaintiff sought psychiatric care was irrelevant since the opinion may constitute substantial evidence. To the extent the ALJ discounted Dr. Nadella's opinion because he relied on plaintiff's statements, which were less than credible due, in part, to his failure to seek treatment, the court addresses the impact of the ALJ's credibility finding below.[3]

The ALJ's third, fourth, and fifth reasons for rejecting Dr. Nadella's opinion were that it was inconsistent with or unsupported by the record. *See Tommasetti*, 533 F.3d at 1041(the incongruity between a physician's opinion and treatment records is a specific and legitimate reason for rejected the opinion); *Batson v.*

---

[3] In contrast to a claimant who did not seek mental health treatment because he was unaware of his illness, plaintiff had been treated with psychiatric medication for three years by his primary care physician and was provided a list of additional resources. *See* AR at 358.

*Comm'r*, 359 F.3d 1190, 1195 (9th Cir. 2004) (holding that an ALJ may discredit physicians' opinions that are "unsupported by the record as a whole . . . or by objective medical findings"). Specifically, the ALJ found that the medical record contradicted Dr. Nadella's opinion that plaintiff's symptoms would last more than twelve months, that the symptoms were not expected to improved even with active treatment, and concerning the degree of limitations in general. *See* AR at 41, 440. Instead, the ALJ noted that the treatment records reflect that plaintiff's psychiatric symptoms were only temporary, lasting from December 2012 through June 2013, they occurred when plaintiff was noncompliant with medications, and they improved with treatment. *Id*. at 41. *See* 20 C.F.R. § 416.909 (in order to qualify for DIB or SSI, an impairment must last for a continuous twelve-month period); *Crosby v. Comm'r*, 489 Fed. Appx. 166, 168-69 (9th Cir. 202) (finding that a physician's opinion was inconsistent with his treatment notes, which indicated claimant improved with treatment, was a specific and legitimate basis to discount physician's opinion). The record also supports the ALJ's finding that the record only contains psychiatric symptoms for a brief period, which coincided with plaintiff's discontinued use of his psychiatric medications, and plaintiff's symptoms improved with medication. *See* AR at 41, 358, 369, 393, 398. Finally, the few references to psychiatric symptoms in the record – sadness, crying, guilt, anhedonia, and occasional difficulty concentrating – may reasonably be interpreted as not supporting the degree of limitations opined by Dr. Nadella. *See id*. at 421. Because Dr. Nadella's opinion was inconsistent with or unsupported by the record, the ALJ's third, fourth, and fifth reasons for discounting Dr. Nadella's opinion were specific and legitimate.

Finally, the ALJ rejected Dr. Nadella's opinion because it was based on plaintiff's self-report that his brother had murdered four people and the ALJ found plaintiff not credible. *Id*. at 41-43. "An ALJ may reject a [] physician's opinion if

it is based 'to a large extent' on a claimant's self-reports that have been properly discounted as incredible." *Tommasetti*, 533 F.3d at 1041. *See Morgan*, 169 F.3d at 602 (ALJ properly rejected physicians' opinions that were premised on claimant's discounted subjective complaints). The ALJ found the story to be unreliable because plaintiff had never mentioned the incident to any other medical providers, including to Dr. Abejuela, a psychiatrist who examined him in connection with a prior application. AR at 41. The ALJ reasonably determined that had this incident been the cause of plaintiff's mental illness, he would have mentioned it at some point to someone.[4] *See id.* Moreover, the ALJ found plaintiff's statements generally not credible, a finding that plaintiff does not contest. *See id.* at 42-43. Given that Dr. Nadella did not review any medical records and observed mild examination findings, it was reasonable for the ALJ to infer that Dr. Nadella relied heavily on plaintiff's self-reports in forming his opinion. Therefore, the ALJ did not err in discounting Dr. Nadella's opinion on the basis that it was based on plaintiff's own less than credible reporting.

Although not all of the reasons the ALJ gave for discounting Dr. Nadella's opinion were legitimate, most were specific and legitimate and supported by substantial evidence. As such, the ALJ did not err in rejecting Dr. Nadella's opinion.

//

//

---

[4]     In addition to never mentioning his brother's alleged crimes to any medical provider, plaintiff actually told his treating physicians that his mental health symptoms started around 1985 when he got married. *See* AR at 358, 421.

# V.

## **CONCLUSION**

IT IS THEREFORE ORDERED that Judgment shall be entered AFFIRMING the decision of the Commissioner denying benefits, and dismissing the complaint with prejudice.

DATED:  November 30, 2018

_____
SHERI PYM
United States Magistrate Judge